PATIENCE DRAKE ROGGENSACK, J.
¶ 1. This is a review of a decision of the court of appeals[1] that affirmed a judgment of the circuit court for Kenosha County.[2] Novy raises two issues. First, Novy claims that the trial court erred when it allowed the State to use certain fingerprint evidence and related testimony in rebuttal, which the court had previously excluded from the State's case-in-chief due to a Wis. Stat. § 971.23 (2009-10) discovery violation.[3] Second, Novy asserts that he was deprived of his right to a fair trial by an impartial jury because, he claims, one of the jurors was sleeping during a portion of defense counsel's closing argument.
¶ 2. We conclude that, with regard to the admission of fingerprint-related testimony on rebuttal, the circuit court did not erroneously exercise its discretion. The circuit court initially determined that the State had failed to comply with its discovery obligations *295 under Wis. Stat. § 971.23(1); and therefore, the court excluded fingerprint evidence and related testimony from the State's case-in-chief pursuant to § 971.23(7m)(a). However, after Novy testified such that the excluded fingerprint evidence and related testimony would controvert his testimony, the circuit court concluded that it could be presented in rebuttal. The circuit court properly interpreted § 971.23 under the facts of this case, and given the significant discretion afforded circuit courts on evidentiary matters, we cannot say that the circuit court erroneously exercised its discretion in permitting the rebuttal use of the fingerprint evidence and related testimony.
¶ 3. With regard to the circuit court's treatment of the allegedly sleeping juror, the circuit court did not find that the juror was sleeping; therefore, Novy failed to establish a finding necessary to his contention. The circuit court's findings are not clearly erroneous, and therefore, we will not overturn the circuit court's refusal to strike the juror. Accordingly, we affirm the decision of the court of appeals.
I. BACKGROUND[4]
¶ 4. For conduct that occurred between May 2008 and January 2009, Novy was charged in Kenosha County with two counts of stalking, 11 counts of felony bail jumping, and one count of violating a harassment injunction. All of the charges related to Novy's conduct *296 toward his ex-fiancé, Julie N. The two had dated on and off for approximately five years, until September of 2007, when Julie ended the relationship. After the relationship ended, Novy continued to contact Julie, to the point where, in November 2007, Julie sought and obtained a harassment injunction against Novy under Wis. Stat. § 813.125(4). The injunction prohibited Novy from contacting Julie in any way, and required that he avoid her residence.
¶ 5. In early May 2008, Novy was charged with one count of stalking, in violation of Wis. Stat. § 940.32(2)(a), (b), and (c). The complaint (case no. 08-CF-500) alleged that, between October 17, 2007, and February 4, 2008, Novy had engaged in a course of conduct, directed at Julie, which had caused Julie to suffer serious emotional distress, and that Novy knew or should have known that his conduct would cause such distress. Generally, Novy's alleged conduct included following and harassing Julie in public places, calling Julie at work and hanging up, accessing Julie's voicemail and prowling around Julie's house. Novy was released on a $1,000 signature bond, which provided that he was to have "No [cjontact w/ Julie [N.]; not to be within 1000 feet of her residence."
¶ 6. Then, on November 12, 2008, Novy was charged with another count of stalking under Wis. Stat. § 940.32(2) and eight counts of felony bail jumping, in violation of Wis. Stat. § 946.49(l)(b). These charges (case no. 08-CF-1307) all involved a course of conduct in which Novy allegedly had engaged between May 4, 2008, and November 10, 2008. Similar to the conduct underlying the previous stalking charge, the alleged conduct involved hang-up calls to Julie's home, following her in public (including waiting for her outside her place of work), lurking around Julie's house and in her *297 neighborhood, and repeatedly calling Julie's friends. Again, Novy was released on bond, this time a $5,000 cash bond, which also provided that he was to have no contact with Julie or her residence.
¶ 7. Relevant for purposes of this appeal, one of the eight counts of bail jumping in case number 08-CF-1307 (Count 7) alleged that, on the night of November 9, 2008, Julie received a hang-up call from a payphone at L&M Meats in Kenosha, which was close to Novy's residence. Julie had previously noticed Novy's vehicle near L&M Meats, and had called her sister from that payphone to determine the phone number associated with that phone. After receiving the hang-up call on the night of November 9, Julie called the police, who went to the payphone at L&M Meats and verified that was the number from which Julie had recently received the phone call. Officers also lifted fingerprints from the receiver of the payphone. Police analysts later determined that these fingerprints matched Novy's fingerprints.
¶ 8. On January 14, 2009, Novy was charged with three additional bail jumping counts, as well as one count of violating the harassment injunction, contrary to Wis. Stat. § 813.125(7). The complaint (case no. 09-CF-58) alleged that Novy had been seen driving slowly past Julie's house, in violation of the harassment injunction and the conditions of his bonds for the prior charges. Novy was again released on a cash bond ($20,000), which reiterated the prohibition on contacting Julie or being within 1,000 feet of her residence.
¶ 9. In late May 2010, a jury trial was held in Kenosha County, wherein the three separate cases were joined and Novy was tried on all 14 counts. During opening statements, counsel for the State referred to testimony about fingerprint evidence that would tend *298 to show that Novy had called Julie from L&M Meats on November 9, 2008. After opening statements, defense counsel moved to exclude the fingerprint evidence and related testimony on the ground that the defense had requested all evidence subject to disclosure under Wis. Stat. § 971.23(1), but the State had failed to provide access to the cards on which the fingerprints were exhibited.[5]
¶ 10. The circuit court concluded that the State had failed in its obligation to properly disclose the fingerprint evidence, as required by Wis. Stat. § 971.23(l)(g). Therefore, the court granted the defendant's motion to exclude the evidence. When counsel for the State asked whether the fingerprint evidence would be available for rebuttal, Judge Kluka responded, "I don't know."
¶ 11. After the State completed its case-in-chief, the defense moved to dismiss Count 7 in case number 08-CF-1307, the bail jumping charge relating to the alleged phone call from the L&M Meats payphone, arguing that without fingerprint-related testimony, the State no longer had any evidence linking Novy to the phone on the night in question. The State conceded that, without the fingerprint-related testimony, the State would be unable to prove the elements of bail jumping for Count 7. Accordingly, the circuit court granted the defendant's motion to dismiss that count.
¶ 12. During the defense's case, Novy chose to testify. Prior to his testimony, defense counsel sought to prevent any questions regarding the phone call from L&M Meats on November 9, 2008, on the ground that the alleged call related solely to the dismissed bail *299 jumping charge. The State responded that the phone call from L&M Meats was a proper subject for questioning because the call related to the course of conduct supporting the second count of stalking, which allegedly occurred between May 4, 2008, and November 10, 2008 (case no. 08-CF-1307). The circuit court agreed with the State and concluded that such questioning was relevant to the second stalking count.
¶ 13. During cross-examination of Novy, counsel for the State asked Novy, "[D]id you call Julie from L and M Meats here in Kenosha on November 9th of 2008 at approximately 8:00 p.m.?" Novy responded, "No, I did not." During Novy's redirect, defense counsel did not ask Novy any clarifying questions regarding his use of the payphone at L&M Meats on the night in question.
¶ 14. As the State prepared to present its case-in-rebuttal, counsel for the State asked whether the fingerprint evidence from L&M Meats and related testimony would be allowed at that point, given Novy's denial of having called Julie from that phone. Defense counsel protested, arguing that the fingerprint-related testimony showed only that Novy had at some point used the payphone at L&M Meats, not that he had necessarily used it that night. Additionally, defense counsel argued that the discovery statute, Wis. Stat. § 971.23(1) and (7m), mandated that evidence that had been excluded for discovery violations be excluded throughout the trial, not solely for the State's case-in-chief. The circuit court, however, disagreed and allowed the State to present the fingerprint evidence and related testimony, calling it "bona fide rebuttal evidence" as to the second stalking charge.
¶ 15. In its case-in-rebuttal, the State presented the testimony of two officers from the Kenosha Police Department, Officers Hamilton and Primmer. Officer *300 Hamilton testified that he was an evidence technician; that he had been dispatched to examine the payphone at L&M Meats on the night of November 9, 2008; and that he had recovered two fingerprints from that phone. Additionally, Officer Primmer testified that he had conducted an analysis of the fingerprints that had been lifted from the payphone at L&M Meats, and that he had determined that those prints matched the fingerprints that the department had on file for Novy.
¶ 16. Defense counsel did not cross-examine Officer Primmer. On surrebuttal, however, defense counsel re-called Novy. Novy testified that, although he had previously denied calling Julie from the payphone at L&M Meats, he had used that phone "quite a few times" in the past. In particular, Novy stated that he had used the phone to call a friend in the Philippines because his cell phone did not have an international calling plan.
¶ 17. After closing arguments and immediately before the selection of the alternate juror, defense counsel sought a sidebar. The record reflects that defense counsel alleged that one of the jurors had been sleeping during the defense's closing argument, and that the juror therefore should be struck. The circuit court denied the motion, and noted that she makes an effort "to keep track of what's going on with the jurors," and that she had not seen the juror sleeping.
¶ 18. The jury found Novy guilty of both counts of stalking, six counts of bail jumping, and the one count of violating the harassment injunction. Novy was sentenced to 90 days in jail for violating the injunction, and two years of imprisonment for the second stalking offense, consisting of one year of confinement and one year of extended supervision. For the remainder of the charges, Novy was placed on probation for five years, with the sentences withheld.
*301 ¶ 19. On appeal to the court of appeals, Novy raised the two issues currently before this court, seeking vacation of his sentence and a remand for a new trial.[6] The court of appeals affirmed the circuit court's decision regarding the rebuttal evidence and the allegedly sleeping juror, concluding that both matters were within the broad discretion of the circuit court, and that there was nothing in the record to suggest that the court had erroneously exercised its discretion. See State v. Novy, 2012 WI App 10, ¶¶ 18, 23, 338 Wis. 2d 439, 809 N.W.2d 889.
¶ 20. Novy petitioned for review, and we granted his petition.
II. DISCUSSION
A. Standard of Review
¶ 21. Novy raises two issues for review. The first issue — whether the circuit court erred by allowing the State to present evidence in rebuttal when that evidence previously had been excluded as a sanction for a discovery violation — relates to the circuit court's decision on an evidentiary matter. Consideration of this issue begins with statutory interpretation and application, which present questions of law for our independent review, although we benefit from the previous interpretations of the court of appeals and the circuit court. Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶ 14, 309 Wis. 2d 541, 749 N.W.2d 581. In addition, whether to admit or deny evidence rests in the sound *302 discretion of the circuit court, which we will not overturn absent an erroneous exercise of discretion. See State v. Smith, 2005 WI 104, ¶ 28, 283 Wis. 2d 57, 699 N.W.2d 508.
¶ 22. Second, Novy argues that the circuit court erred by failing to strike a juror whom defense counsel alleged was sleeping during the defense's closing argument. The circuit court did not find that the juror was sleeping. We will uphold a circuit court's findings of fact unless they are clearly erroneous. See State v. Funk, 2011 WI 62, ¶¶ 29-30, 335 Wis. 2d 369, 799 N.W.2d 421.
B. Rebuttal Evidence
¶ 23. Novy argues that the circuit court erred when it allowed the State to rebut Novy's testimony using fingerprint evidence and related testimony that the court had previously excluded for a discovery violation under Wis. Stat. § 971.23(1) and (7m)(a). The State contends that its use of the fingerprint-related evidence is clearly permitted under § 971.23(l)(d). We therefore begin our discussion with the relevant portions of the discovery statute, § 971.23, which provide in relevant part:
(1) What a district attorney must disclose to a defendant. Upon demand, the district attorney shall, within a reasonable time before trial, disclose to the defendant or his or her attorney and permit the defendant or his or her attorney to inspect and copy or photograph all of the following materials and information, if it is within the possession, custody or control of the state:
*303 (d) A list of all witnesses and their addresses whom the district attorney intends to call at the trial. This paragraph does not apply to rebuttal witnesses or those called for impeachment only.
(e) Any relevant written or recorded statements of a witness named on a list under par. (d), including... any reports or statements of experts made in connection with the case ... and the results of any physical or mental examination, scientific test, experiment or comparison that the district attorney intends to offer in evidence at trial.
(g) Any physical evidence that the district attorney intends to offer in evidence at the trial.
(7m) Sanctions for failure to comply, (a) The court shall exclude any. . . evidence not presented for inspection or copying required by this section, unless good cause is shown for failure to comply.
(Emphasis added.)
1. General principles
¶ 24. When interpreting the meaning of Wis. Stat. § 971.23, we begin with the language of the statute. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "If the meaning of the statute is plain, we ordinarily stop the inquiry," and the statute will be applied according to that plain meaning. Id., ¶¶ 45-46 (internal quotation marks omitted). Statutes are interpreted in context, as they relate to each other. Id., ¶ 46.
*304 ¶ 25. Wisconsin Stat. § 971.23(l)(d) has an exception for disclosure of rebuttal evidence that has been interpreted by appellate courts on other occasions. Such interpretations have concluded that the plain meaning of § 971.23(1)(d) does not require the State to disclose "rebuttal witnesses or those called for impeachment only." See Lunde v. State, 85 Wis. 2d 80, 91, 270 N.W.2d 180 (1978).
¶ 26. Appellate courts also have concluded that the State has no obligation under Wis. Stat. § 971.23(l)(d) to disclose rebuttal evidence, even when the State anticipates before trial that certain evidence may be used for rebuttal. State v. Konkol, 2002 WI App 174, ¶ 1, 256 Wis. 2d 725, 649 N.W.2d 300.
¶ 27. Notwithstanding that the State has no statutory discovery obligation to disclose rebuttal evidence, where the circuit court determines that the State has failed to comply with the initial requirements set forth in Wis. Stat. § 971.23(1), the court "shall exclude any witness not listed or evidence not presented for inspection or copying required by this section, unless good cause is shown for failure to comply." § 971.23(7m)(a).
¶ 28. Such an initial order under Wis. Stat. § 971.23(7m)(a) was made by the circuit court in this case when the fingerprint evidence and related testimony that would have been used for the State's casein-chief was excluded. Notwithstanding this order, after Novy testified, the State asserts that the fingerprint evidence and related testimony became rebuttal evidence. No appellate court has determined what, if any, effect paragraph (7m) (a) has on paragraph (l)(d)'s exception for discovery of rebuttal testimony.
¶ 29. Furthermore, in addition to statutory provisions governing disclosure of evidence by the State, we *305 have long recognized the circuit court's discretion on evidentiary matters, including the exclusion and admission of evidence on rebuttal. See Howard v. Beldenville Lumber Co., 129 Wis. 98, 110-11, 108 N.W. 48 (1906); McGowan v. Chi. & Nw. Ry. Co., 91 Wis. 147, 153-54, 64 N.W 891 (1895).
¶ 30. We have set forth a relatively broad general rule to define rebuttal evidence. We have explained that rebuttal evidence is that "which squarely meets and controverts some affirmative fact or facts which the adversary has attempted to prove." State v. Watson, 46 Wis. 2d 492, 499, 175 N.W.2d 244 (1970) (internal quotation marks omitted).
¶ 31. Furthermore, even with this general rule for rebuttal evidence, we have consistently reaffirmed a circuit court's broad discretion to admit "evidence of any acts or circumstances which are inconsistent with the relevant testimony of [a] witness. Any evidence, otherwise proper, which in any respect tends to contradict the witness, is admissible for this purpose." Id. at 500 (internal quotation marks omitted).
¶ 32. Indeed, we have affirmed circuit courts' discretion to admit evidence in rebuttal even if the evidence tends to corroborate the case-in-chief, see McGowan, 91 Wis. at 154, and where the evidence could have been submitted in the State's case-in-chief, see Watson, 46 Wis. 2d at 500. In those instances, we have recognized that the admission of such evidence may be "necessary to achieve justice," and the determination of what is necessary in those instances is subject to the circuit court's discretion. Id. at 499 (internal quotation marks omitted).
¶ 33. However, appellate courts have implied that evidence is not appropriate in rebuttal where it is plain that the evidence was withheld from the case-in-chief *306 for dramatic effect or to ambush the defendant, although this rule would be subject to the necessities of justice. See Lunde, 85 Wis. 2d at 91-92; McGowan, 91 Wis. at 154; cf. Konkol, 256 Wis. 2d 725, ¶¶ 15-19 (rejecting circuit court's determination that an expert's testimony was "not really rebuttal" and that it "could have been proffered during the case in chief').
¶ 34. Wisconsin courts have come to refer to evidence that is proper for rebuttal as "bona fide rebuttal evidence." See Lunde, 85 Wis. 2d at 91; State v. Sandoval, 2009 WI App 61, ¶ 30, 318 Wis. 2d 126, 767 N.W.2d 291. Specifically, appellate courts have defined bona fide rebuttal evidence as that which (1) was not necessary to the State's (or plaintiffs) case-in-chief, and (2) which became necessary and appropriate when the defense made its case. See Lunde, 85 Wis. 2d at 91-92. Bona fide rebuttal evidence is not determined by asking whether the evidence could have been admitted in the State's case-in-chief, but rather whether the evidence became necessary and appropriate because it controverts the defendant's case. See Konkol, 256 Wis. 2d 725, ¶ 18; Lunde, 85 Wis. 2d at 91-92.
¶ 35. Moreover, rebuttal evidence is no less bona fide when the State is able to anticipate the defense's theory or particular pieces of evidence. See Konkol, 256 Wis. 2d 725, ¶ 15. Once the defendant raises a particular theory, the defendant's veracity and the credibility of that theory become relevant issues in the case. See id., ¶ 17. The State's ability to predict or anticipate the defendant's theory does not diminish the necessity or propriety of otherwise bona fide rebuttal evidence. See id., ¶ 17 & n.6. To the extent that the State is better able to prepare a strong rebuttal to the defense's theory, *307 the truth-seeking function of litigation is better served, in that the possibility of such rebuttal will keep the defendant honest, or at least afford the State an opportunity to shed light upon questions raised by the defense's case. See id., ¶ 17 n.6.
2. Application
¶ 36. As we apply the principles set out above, we will uphold a circuit court's decision to admit or exclude evidence if the circuit court examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion. Miller v. Hanover Ins. Co., 2010 WI 75, ¶ 29, 326 Wis. 2d 640, 785 N.W.2d 493.
¶ 37. The circuit court's discussion of whether the fingerprint evidence and related testimony was proper rebuttal evidence shows consideration of the relevant facts and is consistent with the discovery statute, Wis. Stat. § 971.23, as interpreted by appellate courts. Following opening statements, Novy objected to the use of the fingerprint evidence and related testimony based on the State's failure to provide the defense with access to the fingerprint cards that were to be used by the State's witnesses.[7] The circuit court agreed with Novy and held that, under § 971.23(7m)(a), the State could not use the *308 fingerprint evidence in its case-in-chief, although the court reserved judgment on whether the evidence would be admissible in rebuttal.
¶ 38. The circuit court's interpretation of Wis. Stat. § 971.23 — including the State's discovery obligations and the applicable sanctions for discovery violations — is supported by the plain meaning of the statute as interpreted by appellate courts. Section 971.23(l)(g) requires the State to disclose "any physical evidence" that the State intends to offer in evidence at trial, and upon failure to comply with that provision, § 971.23(7m)(a) requires that the court "shall exclude any . .. evidence not presented for inspection or copying required by [§ 971.23]." Accordingly, the court's initial decision to exclude the fingerprint evidence and related testimony from the State's case-in-chief was in accord with the plain language of the statute.
¶ 39. Novy contends that once the circuit court excluded the fingerprint evidence and related testimony, the court was without discretion to allow the evidence or testimony on rebuttal. Novy relies on Wis. Stat. § 971.23(7m)(a)'s statement that, upon finding that the State has violated its discovery obligations, "[t]he court shall exclude any witness not listed or evidence not presented for inspection. . . unless good cause is shown for failure to comply." He asserts that this provision withdraws the circuit court's discretion to later allow such evidence for purposes of rebuttal. Appellate court decisions, however, have suggested otherwise.
¶ 40. As noted above, the discretion afforded circuit courts has been reaffirmed numerous times since the enactment of the discovery statute. See Konkol, 256 Wis. 2d 725, ¶¶ 15-18. In Konkol, the court of appeals *309 determined that the circuit court had erroneously excluded rebuttal evidence, where the circuit court had concluded that the State's use of the evidence in rebuttal was an attempt to circumvent the disclosure requirements of Wis. Stat. § 971.23(1)(d). Id., ¶¶ 5-7,18. Relying on our decision in Lunde, 85 Wis. 2d at 91-92, the court of appeals in Konkol reaffirmed the principle that the proper analysis for determining whether evidence is "bona fide rebuttal evidence" is not whether the evidence could have been admitted in the State's casein-chief, but rather whether the evidence became necessary and appropriate upon presentation of the defense's case. Konkol, 256 Wis. 2d 725, ¶ 18.
¶ 41. This test for bona fide rebuttal evidence effectively harmonizes the plain language of the sanctions provision in the discovery statute and the discretion of the circuit court. The sanctions provision of the discovery statute, Wis. Stat. § 971.23(7m)(a), provides that "[t]he court shall exclude" evidence for which the State failed to comply with the disclosure requirements. Here, the circuit court did just that: upon determining that the State failed to provide proper access to the fingerprint cards, that evidence and related testimony was excluded from the State's case-in-chief.
¶ 42. However, notwithstanding the initial exclusion, such an exclusion need not be absolute because circuit courts retain significant discretion to admit rebuttal evidence, even when such evidence was not disclosed for use in the case-in-chief. See id. (relying on Lunde, 85 Wis. 2d at 91-92); cf. Wold v. State, 57 Wis. 2d 344, 355, 204 N.W.2d 482 (1973) (recognizing that in the context of impeachment of a defendant by a prior inconsistent statement that was obtained in violation of the warnings required under Miranda v. Arizona, 384 *310 U.S. 436 (1966), the proper focus is on the statement's trustworthiness, or lack thereof, not on whether the statement was excluded from the State's case-in-chief). Moreover, as relevant here, the circuit court's discretion to admit evidence on rebuttal is particularly broad "when the evidence is necessary to achieve justice." Watson, 46 Wis. 2d at 499 (internal quotation marks omitted).
¶ 43. During the defense's case, Novy testified that he did not call Julie from the payphone at L&M Meats on the night of November 9, 2008. This statement raised an issue of credibility between Novy's and Julie's accounts of what occurred that evening because Julie had previously testified that she had received such a phone call and implicated Novy. Accordingly, after Novy's testimony, admission of testimony related to the fingerprint evidence became necessary and appropriate as rebuttal testimony to contradict Novy's testimony.
¶ 44. Furthermore, neither the State's pointed question (whether Novy called Julie from the payphone that night) nor the fact that Novy might have used the phone on other occasions diminished the propriety of the State's use of the fingerprint evidence and related testimony in rebuttal. As we have said, the standard for rebuttal evidence is quite broad: any evidence otherwise admissible that "in any respect tends to contradict the witness, is admissible" for rebuttal. Id. at 500 (internal quotation marks omitted). On this standard, we cannot say that the circuit court erroneously exercised its discretion in allowing the State to offer testimony that tended to undermine or contradict Novy's *311 testimony regarding his use of the payphone at L&M Meats on November 9, 2008.[8]
¶ 45. Accordingly, we conclude that the circuit court's interpretation of the statute was consistent with prior appellate decisions, and that the circuit court's decision to allow testimony relating to fingerprint evidence on rebuttal was not an erroneous exercise of discretion.
C. Juror Inattentiveness
¶ 46. The second issue Novy raises is that the circuit court erred by denying Novy's motion to strike a juror whom defense counsel claimed was sleeping during the defense's closing argument. This argument is based on the constitutional right to an impartial jury and due process, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution. See State v. Kettner, 2011 WI App 142, ¶ 23, 337 Wis. 2d 461, 805 N.W.2d 132.
*312 1. General principles
¶ 47. The right to a fair trial by an impartial jury underlies the requirement that jurors have heard all of the material portions of the trial. See id. "The absence of this condition, whether it is due to a hearing deficiency or a state of semi-consciousness, could imperil the guarantees of impartiality and due process." Id. (quoting State v. Hampton (Hampton I), 201 Wis. 2d 662, 668, 549 N.W.2d 756 (Ct. App. 1996) (internal quotation marks omitted). Review of an allegation of juror inattentiveness involves a twofold inquiry: First, the circuit court must determine, as a question of fact, whether the juror was actually inattentive to the point of potentially undermining the fairness of the trial; here, whether the juror was sleeping. See State v. Hampton (Hampton II), 217 Wis. 2d 614, 621, 579 N.W.2d 260 (Ct. App. 1998). Second, if the circuit court finds that the juror was in fact sufficiently inattentive, the court must determine whether the defendant suffered prejudice as a result of the juror's inattentiveness. See id.
¶ 48. As with evidentiary issues, questions involving juror conduct and attentiveness implicate the circuit court's broad discretion. See id. Accordingly, although we review a circuit court's prejudice analysis as a matter of law, we will uphold a circuit court's factual findings regarding the conduct and attentiveness of the jurors, unless those findings are clearly erroneous. See Kettner, 337 Wis. 2d 461, ¶ 12.
2. Application
¶ 49. Our decision on this issue rests on the absence of a necessary factual finding by the circuit court that a juror was sleeping. See id. Without such a *313 finding, we need not address the question of law this issue presents, i.e., whether the juror's alleged sleeping prejudiced Novy.
¶ 50. After completion of closing arguments, defense counsel sought a sidebar during which he moved to strike the allegedly sleeping juror. Judge Kluka denied the motion and, after the jury left the courtroom, counsel was afforded an opportunity to make a record of his objection. During that discussion, Judge Kluka noted that she considered the defense counsel's request, but that she did not see the juror sleeping. Additionally, Judge Kluka also noted that she had kept "track of what's going on with the jurors fairly well," and that she had "paid very[,] very close attention to the demeanor and conduct of the jurors."
¶ 51. In explaining the reason for her ruling, the circuit court did not find that the juror was sleeping, and therefore, Novy did not establish a fact necessary to his motion to strike. On this record, we cannot say that the circuit court's findings are clearly erroneous because they did not include a finding that the juror was sleeping. Because we accept such findings, we do not discuss this legal challenge further.[9] Accordingly, we affirm the circuit court's denial of Novy's motion to *314 strike the allegedly sleeping juror from further participation in his trial.
III. CONCLUSION
¶ 52. We conclude that, with regard to the admission of rebuttal fingerprint-related testimony, the circuit court did not erroneously exercise its discretion. The circuit court initially determined that the State had failed to comply with its discovery obligations under Wis. Stat. § 971.23(1); and therefore, the court excluded fingerprint evidence and related testimony from the State's case-in-chief pursuant to § 971.23(7m)(a). However, after Novy testified such that the excluded fingerprint evidence and related testimony would controvert his testimony, the circuit court concluded that it could be presented in rebuttal. The circuit court properly interpreted § 971.23 under the facts of this case, and given the significant discretion afforded circuit courts on evidentiary matters, we cannot say that the circuit court erroneously exercised its discretion in permitting the rebuttal use of the fingerprint evidence and related testimony.
¶ 53. With regard to the circuit court's treatment of the allegedly sleeping juror, the circuit court did not find that the juror was sleeping; and therefore, Novy failed to establish a finding necessary to his contention. *315 The circuit court's findings are not clearly erroneous; and therefore, we will not overturn the circuit court's refusal to strike the juror. Accordingly, we affirm the decision of the court of appeals.
By the Court. — The decision of the court of appeals is affirmed.
¶ 54. DAVID T. PROSSER, J., did not participate.

 State v. Novy, 2012 WI App 10, 338 Wis. 2d 439, 809 N.W.2d 889.

 The Honorable Barbara A. Kluka presided.

 Although the charged events occurred between 2007 and 2009, the relevant statutory provisions are identical to the current version of the statutes, and therefore, all subsequent references to the Wisconsin Statutes are to the 2009 — 10 edition unless otherwise indicated.

 Novy's trial involved 14 separate charges, but only two of those charges are relevant to this appeal: one count of bail jumping and one stalking charge. Therefore, we will briefly summarize the facts leading up to and including the trial, focusing on the two relevant charges, as well as the facts related to Novy's allegation that a juror was sleeping during defense counsel's closing argument.

 Although the State had provided defense counsel with an expert's report relating to the fingerprint evidence, the actual fingerprint cards were not available when defense counsel went to review the materials at the evidence bureau.

 In the court of appeals, Novy also raised another issue relating to "other acts" evidence that he has not raised before this court.

 The parties do not dispute that the State provided the defense with a report of the State's expert, Todd Thorne, detailing the conclusions of his analysis of the fingerprints. The circuit court concluded, however, that the report was insufficient under Wis. Stat. § 971.23(l)(g), which requires the State to provide access to "[a]ny physical evidence that the district attorney intends to offer in evidence at the trial." On that basis, the court excluded from the State's case-in-chief both the physical fingerprint evidence and the State's expert's testimony.

 Novy also argues that the fingerprint-related testimony became irrelevant once the applicable bail jumping charge (Count 7) was dismissed. However, the nature of the offense of stalking suggests that Novy's conduct relevant to the bail jumping charge (viz., calling Julie at home) was equally relevant to demonstrate the course of conduct for stalking. See State v. Conner, 2011 WI 8, ¶ 28, 331 Wis. 2d 352, 795 N.W.2d 750 (discussing the nature of the offense of stalking). This is so because if the jury believed that Novy called Julie from L&M Meats on the night in question, such facts would tend to support the State's theory that Novy had engaged in a course of conduct that Novy knew or should have known would cause Julie to suffer serious emotional distress, and that did in fact cause such distress. See Wis. Stat. § 940.32(2)(a), (b), and (c) (setting forth elements of the offense of stalking).

 At oral argument, counsel for Mr. Novy was questioned about whether the circuit court made findings regarding the allegedly sleeping juror. Justice Roggensack said that it seemed "the trial court made a finding that she didn't see that there was any juror sleeping." Counsel for Mr. Novy responded, 'You know, judge, I read that, and that certainly is true, but I don't think the judge in [her] decision made that the issue. I think [she] made the issue that you just don't have to have a juror listen to closing arguments if they choose not to listen." Oral Argument at 4:40, State v. Novy, 2011AP407-CR, available at httpd/www.wiseye. org/Programming[VideoArchivelArchiveList.aspx?cv=34.
*314 Counsel for the State noted defense counsel's concession on the trial court's finding, and reiterated that it was the State's position that "the circuit court made a finding that the juror was not sleeping," but that the court also "went that step further and said 'Even if the juror was sleeping, then [the court doesn't] find any prejudice because this wasn't testimonial.'" Underscoring this point, counsel for the State concluded that "On these facts, [although] there was no... explicit finding,... I think it can definitely be interpreted as a finding of fact that the juror was not asleep." Id. at 27:00.