PER CURIAM.
¶1 Latrail Putman was convicted following a jury trial of first-degree recklessly endangering safety and of arson to a building. He makes three arguments on appeal: (1) the circuit court erred by not granting his motion for a mistrial related to testimony by a law enforcement witness; (2) he received ineffective assistance of counsel when his trial counsel failed to take any action concerning a juror who Putman asserts was sleeping during the presentation of evidence; and (3) the court erred by not "conduct[ing] some inquiry" into the issue of the sleeping juror.
¶2 As to the first argument, Putman fails to show that the circuit court misused its discretion when it did not grant his motion for a mistrial. As to the second and third arguments, both are premised on Putman's contention that the court erred when it found that no juror had slept through the presentation of evidence. Because we do not agree with Putman that this finding is clearly erroneous, we reject both arguments. Accordingly, we affirm.
BACKGROUND
¶3 Putman was charged with one count of recklessly endangering safety and one count of arson to a building, both as a repeater and as an act of domestic abuse. The criminal complaint alleged that Putman poured gasoline on the victim's residence and threw a flaming bottle into the residence while the victim and several other individuals were inside. Prior to trial, Putman filed a notice of alibi, which stated that he had been with his girlfriend, Britny Hairston, at their residence on the night of the incident. A two-day jury trial ensued. During the first day, the victim and several law enforcement officers testified; during the second day, Hairston and Putman testified. The jury returned a guilty verdict on both counts.
¶4 We recite additional facts specific to Putman's arguments on appeal in the discussion that follows.
DISCUSSION
¶5 As stated, Putman makes three arguments on appeal. First, he argues that the circuit court misused its discretion by not granting his motion for a mistrial related to testimony by one of the law enforcement witnesses. Second, he argues that he received ineffective assistance of counsel because his trial counsel failed to take any action at trial related to a juror Putman asserts was sleeping during the presentation of evidence. Third, he argues that the court misused its discretion by failing to "conduct some inquiry" into whether a juror slept through the presentation of evidence. We address and reject each argument in turn.
I. The Circuit Court Did Not Misuse Its Discretion by Not Granting Putman's Motion for a Mistrial
¶6 "Generally, in determining whether to grant a mistrial ... the circuit court must decide, in light of the entire facts and circumstances, whether the defendant can receive a fair trial. It examines whether the claimed error is sufficiently prejudicial to warrant a mistrial." State v. Ford , 2007 WI 138, ¶29, 306 Wis. 2d 1, 742 N.W.2d 61. A mistrial in a criminal case is a drastic remedy. See State v. Adams , 221 Wis. 2d 1, 17, 584 N.W.2d 695 (Ct. App. 1998).
¶7 "A motion for mistrial is committed to the sound discretion of the circuit court. An erroneous exercise of discretion may arise from an error in law or from the failure of the circuit court to base its decisions on the facts in the record." Id. , ¶28. "The denial of a motion for mistrial will be reversed only on a clear showing of erroneous use of discretion." Id. , ¶29. The party alleging a misuse of discretion has the burden of establishing the misuse. Colby v. Colby , 102 Wis. 2d 198, 207-08, 306 N.W.2d 57 (1981).
¶8 The facts underlying Putman's motion for a mistrial are as follows. At trial, the State offered the testimony of Officer Kevin Wilke, who had gone to Putman and Hairston's residence and taken Hairston into custody early in the morning after the night of the incident. The State asked Wilke several questions related to what he did after his arrival at Putman and Hairston's residence. During the course of the State's questioning, the following exchange between Wilke and the prosecutor took place:
Q. What did you do after you noticed the smell of gasoline?
A. I had [Hairston] step out so she could, because I asked her if she smelled gasoline as well. She told me, no, so I had her step out, take a couple breaths, step in. Then she told me she was able to smell the gasoline as well.
Q. So, what did you do next?
A. From what I had understood, [Hairston] was probably the driver.
Putman immediately objected based on hearsay, and the circuit court sustained the objection. The State asked Wilke no further questions concerning his statement that Hairston "was probably the driver," and at no point during the remainder of the trial was reference made to the possibility that Hairston had been driving near the scene at the time of the incident.
¶9 At the end of Wilke's testimony, Putman moved for a mistrial. Putman argued before the circuit court that Wilke's statement that he had understood Hairston to be "the driver" was inadmissible hearsay testimony,[1] and that it was prejudicial to Putman's alibi defense because it placed Hairston outside Putman and Hairston's residence on the night of the incident. The State opposed the motion and requested a curative instruction for the jury to disregard Wilke's statement. The court then made the following statement:
[A curative instruction] would really be drawing attention to what the officer said.... So, it might be appropriate at the end of the trial to indicate that there is no evidence introduced that [Hairston] was involved in this ... in any way, if that is where we end up, so we can think about that. But at this point I am not going to take any action. I think it was pretty brief, pretty limited and there hasn't been any affirmative evidence about [Hairston] being involved. Plus, I don't even know if she's going to testify.
¶10 On appeal, Putman argues that the circuit court misused its discretion by not granting him a mistrial. Specifically, Putman contends that the court misused its discretion "by not exercising discretion." See Tina B. v. Richard H. , 2014 WI App 123, ¶45, 359 Wis. 2d 204, 857 N.W.2d 432 (stating that a court improperly exercises discretion when it has not exercised discretion). According to Putman, "the circuit court never made a decision as to whether Putman could receive a fair trial," but instead stated only that " 'at this point,' [it was] not going to 'take any action' " on the motion. As we understand his argument, Putman contends that the court did not rule on his motion at all, but instead deferred a ruling until such time as Hairston testified. Once Hairston did testify, the argument goes, the court had an obligation to revisit the motion to evaluate whether Wilke's statement was sufficiently prejudicial to warrant a mistrial. According to Putman, because the court did not revisit the motion for a new trial after Hairston's testimony, it never exercised any discretion to determine whether Wilke's statement was sufficiently prejudicial.
¶11 The record refutes Putman's characterization of the circuit court's decision. Contrary to Putman's assertion, the court did not defer its decision on Putman's motion for a mistrial until Hairston's testimony. Rather, the court explained that it was not granting a new trial because Wilke's statement was "pretty brief" and "pretty limited." Thus, the court did not rely on its observation that it did not yet know if Hairston would testify, but instead considered the facts before it to decide that any error that Wilke's statement had engendered did not warrant a mistrial. The court therefore properly exercised its discretion in deciding not to grant a mistrial. See State v. Bunch , 191 Wis. 2d 501, 506-07, 529 N.W.2d 923 (Ct. App. 1995) (A court properly exercises its discretion when it "examine[s] the relevant facts, applie[s] the proper standard of law, and engage[s] in a rational decision-making process.").
¶12 Furthermore, even if we accept Putman's premise that the circuit court did not rule on the motion, Putman has not preserved the issue on appeal, because he failed to re-raise the motion after Hairston's testimony or at any other point of the trial. See Berna-Mork v. Jones , 173 Wis. 2d 733, 739-40, 496 N.W.2d 637 (Ct. App. 1992) (moving party's failure to obtain a ruling on a motion "constitutes a waiver of the motion precluding its consideration on appeal" (citation omitted)); State v. Woods , 144 Wis. 2d 710, 716, 424 N.W.2d 730 (Ct. App. 1988) (party who failed to pursue a motion that had been made but not decided effectively abandoned the motion).[2]
¶13 In sum, Putman fails to show that the circuit court misused its discretion by not granting his motion for a mistrial.
II. Putman Failed to Prove that He Received Ineffective Assistance of Counsel
¶14 Putman argues that his trial counsel was ineffective for failing to take any action in response to a statement by the prosecutor about a sleeping juror. We first review the legal principles pertaining to claims of ineffective assistance of counsel and to claims of sleeping jurors. We then review the pertinent facts. Finally, we explain why the circuit court's finding that no juror had slept through the presentation of evidence is not clearly erroneous, and conclude that Putman's ineffective assistance of counsel claim fails in light of that finding.
A. Law Applicable to Ineffective Assistance of Counsel Claims
¶15 The United States Constitution guarantees to criminal defendants the right to effective assistance of counsel. State v. Balliette , 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334 ; Strickland v. Washington , 466 U.S. 668, 686 (1984). To establish constitutionally ineffective assistance, a defendant must prove both: (1) that counsel's performance was deficient; and (2) that the deficiency was prejudicial. Balliette , 336 Wis. 2d 358, ¶21 ; Strickland , 466 U.S. at 687. If a court determines that the defendant has made an insufficient showing on one of those two prongs, the court need not examine the other. Strickland , 466 U.S. at 697. We decide this appeal on the prejudice prong.
¶16 To establish prejudice, the defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. , 466 U.S. at 694.
¶17 Whether counsel's actions constitute ineffective assistance presents a mixed question of fact and law. State v. Pitsch , 124 Wis. 2d 628, 633-34, 369 N.W.2d 711 (1985). This court will not reverse the circuit court's factual findings unless they are clearly erroneous. Id. at 634. "Findings of fact include 'the circumstances of the case and the counsel's conduct and strategy.' " State v. Thiel , 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305 (citation omitted). Whether counsel's behavior was prejudicial to the defendant is a question of law which this court reviews de novo. Pitsch , 124 Wis. 2d at 634.
B. Law Applicable to Sleeping Juror Claims
¶18 " Article I, § 7 of the Wisconsin Constitution, guaranteeing an impartial jury, and the Sixth and Fourteenth Amendments to the United States Constitution, guaranteeing an impartial jury and due process, require that a criminal not be tried by a juror who cannot comprehend the testimony." State v. Hampton , 201 Wis. 2d 662, 668, 549 N.W.2d 756 (Ct. App. 1996). A sleeping juror falls within the category of a "juror who cannot comprehend the testimony." See id. at 668-69. Whether these rights have been violated is a question of law that we review de novo, but in our review, we accept the factual findings of the circuit court unless they are clearly erroneous. State v. Turner , 186 Wis. 2d 277, 284, 521 N.W.2d 148 (Ct. App. 1994).
C. Pertinent Facts
¶19 The facts underlying Putman's ineffectiveness of counsel claim are as follows. As stated, the victim and several law enforcement officers testified on the first day of trial. At the start of the second day of trial, before the jury entered, the following exchange took place:
THE COURT: Bring the jury down, please. Apparently we only have 12 jurors. That will mean the remaining 12 will be the jury. One of the jurors hasn't come back.
[DEFENSE COUNSEL]: Do we know which one?
THE COURT: [Juror's name]. Elderly lady.
[PROSECUTOR]: The one who was sleeping? She dozed in and out. I saw her.
THE COURT: Apparently the juror showed up, so we have 13.
The jury then entered. No further mention or discussion of a sleeping juror occurred during the trial.
¶20 Following entry of the judgment of conviction, Putman filed a notice of intent to pursue postconviction relief and moved for a new trial. He argued that a new trial was warranted because he received ineffective assistance of counsel when his trial counsel failed to take any action in response to the prosecutor's statement concerning a sleeping juror.
¶21 In response to Putman's postconviction motion, the circuit court held an evidentiary hearing, at which it heard testimony from Putman, Putman's trial counsel, and the prosecutor who made the statement concerning a sleeping juror.
¶22 Putman testified as follows. He observed one of the jurors, "an elderly woman" who sat in the front on the far left, sleeping on the first day of trial. The juror had her eyes closed and was "nodding on and off" during the victim's testimony and through parts of one of the detectives' testimony. Putman did not say anything to trial counsel because he did not know that it was an issue that he could bring up.
¶23 Putman's trial counsel testified as follows. As a general practice, he looks at the jury infrequently during trial. During this trial, he did not recall noticing a juror who was sleeping. He did not recall the prosecutor's reference to the sleeping juror, why he did not ask the court to make inquiry of the juror, or Putman ever mentioning a sleeping juror.
¶24 The prosecutor testified as follows. She recalled the trial starting late that morning but did not recall making the statement about the sleeping juror. She "[did] not remember a juror sleeping or which one it would have been." She could think of no reason why she would not have asked the court to make inquiry of a juror who may have been sleeping.
¶25 The circuit court placed its own recollection of the trial on the record. The court first explained that having recently presided over its 501st jury trial, it was "particularly aware of what goes on in the courtroom." The court stated that it was "quite aware of the issue of dozing or inattentive ... jurors ... [because] no judge wants to have to retry a case," noted its "unique vantage point" for observing witnesses, defendants, and jurors, and stated that it "make[s] a habit of constantly checking sort of three things ... jurors ... [d]efendants ... [t]he witness." Based on these practices, the court stated:
I can assure you that no juror in this case dozed off ... let alone slept through the majority of the victim witness' testimony. She was on the stand the balance of the morning on the 23rd and the first segment of the afternoon testimony, so she was on the stand for a good bit of time, and to suggest, as Mr. Putman has, that-that this juror slept through most of her testimony as he just testified to is simply wrong ... it's simply not true because I would have noticed a juror sleeping or dozing off for any period of time beyond 10 seconds. I don't go more than 10, 15 seconds without looking at the jury box or a defendant or-so for Mr. Putman to testify that he saw a juror sleeping through the majority of [the victim's] testimony is simply not true and it-it's impossible for me to believe that [trial counsel], even though he testified that he didn't frequently look at the jury, wouldn't have noticed something like that, especially given where Mr. Putman says this juror was sitting.
[I]t would be almost impossible for [trial counsel] to be questioning the victim on the stand and not have that sleeping juror with her head down in his line of sight given [where trial counsel] would have been sitting ... and to look at the witness box, you almost, by definition ... have to have that corner of the jury box in your line of sight.
¶26 The court then recalled that the prosecutor's statement about the sleeping juror must have been made just as the court "would have heard the back door open and close [and] sa[id] 'Apparently the juror showed up so we have 13.' " The court noted that, although the prosecutor shed no light on what she meant by her statement because she could not recall making the statement or what she had been referencing, the prosecutor would have followed up on her statement during trial had the matter been "serious and substantial" to forestall any chance of an appeal. The court continued, "I saw no evidence during this trial of anyone on this jury dozing off or sleeping for any period of time ... those are my recollections of this trial."
¶27 The circuit court made the following findings:
I don't think there's any ... credible evidence on this record that a juror slept through material evidence in this case or dozed off or was inattentive during any material evidence in this case ... I find the defendant's testimony to be incredible for the reasons that I did allude to earlier and now I'm making that as a finding because it is ... not my recollection nor does it make sense to me that, even if it weren't my recollection, that the defendant would sit there, be staring at [the victim] testifying against him and outlining all these terrible things that she says he did and seeing a juror sleeping and never say anything about it until ... the post-conviction period of this case happened that somehow-and it is curious to me that the descriptor he used is exactly the same as the prosecutor when he described her and where she was sitting in the jury box, and I find that incredible to believe that this juror would have-that he watched that, saw that, didn't say anything.
¶28 The court also found that Putman's trial attorney, whom the court knew by experience and reputation to be a very competent, capable attorney, would not miss a juror sleeping through the victim's testimony due, in part, to the layout of the courtroom.
¶29 In sum, the circuit court found that "the defense has [not] put on credible evidence to convince [it] that any juror was inattentive or sleeping during the presentation of any material evidence." Accordingly, the court determined that there had been no ineffective assistance of counsel.
D. Analysis
¶30 As stated, Putman argues that he received ineffective assistance of counsel when his trial counsel failed to take any action in response to the prosecutor's statement concerning a sleeping juror. The problem with Putman's argument is that he cannot show that he was prejudiced by trial counsel's failure because the circuit court made the factual finding that no juror was sleeping. Thus, there is no reasonable probability of a different outcome had trial counsel acted promptly and the court conducted further inquiry at trial. See Hampton , 201 Wis. 2d at 673 (a circuit court must conduct further inquiry where "there is a sufficient demonstration of juror sleepiness"). That is, leaving aside whether the prosecutor's statement sufficiently demonstrated juror sleepiness to trigger trial counsel's obligation to act, the court's factual finding that no juror was sleeping precludes Putman from being able to show that trial counsel's failure to act prejudiced him. See State v. Novy , 2013 WI 23, ¶49, 346 Wis. 2d 289, 827 N.W.2d 610 (whether a sleeping juror resulted in a constitutional violation requires a factual finding by the circuit court that a juror was sleeping).
¶31 Putman contends that the circuit court's finding that no juror slept during the presentation of evidence is clearly erroneous. He argues that this is so because "[t]he prosecutor's statements during trial ... established that a juror was sleeping and/or inattentive," and that, to the extent the prosecutor's statement conflicted with other evidence presented at the postconviction hearing, the court was obliged to follow "the observation placed on the record by the prosecutor during trial." However, Putman's argument disregards our standard of review.
¶32 Our supreme court explained the review given to a circuit court's factual findings in Royster-Clark, Inc. v. Olsen's Mill, Inc. , 2006 WI 46, 290 Wis. 2d 264, 714 N.W.2d 530 :
The standard of review we apply to a circuit court's findings of fact is highly deferential. Wisconsin statutes require that a circuit court's "[f]indings of fact shall not be set aside unless clearly erroneous...." In other words, this court defers to the circuit court's findings of fact unless they are unsupported by the record and are, therefore, clearly erroneous.
A circuit court's findings of fact are clearly erroneous when the finding is against the great weight and clear preponderance of the evidence. Under the clearly erroneous standard, "even though the evidence would permit a contrary finding, findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding." Moreover, we search the record not for evidence opposing the circuit court's decision, but for evidence supporting it.
Id. , ¶¶11-12 (ellipses in original, citations and footnote omitted).
¶33 Thus, although Putman's assertion that there is evidence that a juror did sleep during the presentation of testimony on the first day of trial may be accurate, this does not render the circuit court's finding to the contrary clearly erroneous. The evidence that Putman points to is his own testimony and the prosecutor's statement. However, the court found Putman's testimony not credible for reasons that Putman does not dispute, and "[w]e are not empowered to substitute our own credibility determinations for those made by the [circuit] court." State v. Hampton , 217 Wis. 2d 614, 623, 579 N.W.2d 260 (Ct. App. 1998). Also, the court acknowledged the prosecutor's statement but found its meaning to be unclear in light of the prosecutor's inability to recall either the statement or the behavior it described. The evidence pointing the other way included: (1) the fact that Putman's trial counsel would have noticed a sleeping juror in the location identified by Putman, given counsel's experience and line of sight to that location; and (2) the court's recollection that it followed its practice of regularly checking for juror attentiveness during this trial.[3] A fact finder could reasonably give greater weight to this latter evidence than to the prosecutor's unexplained statement, particularly in light of the court's finding that she would have acted on it at the time had action been warranted. Thus, the court's finding that no juror slept was reasonable based on the evidence before it, and we defer to that finding on appeal. See Royster-Clark , 290 Wis. 2d 264, ¶12 ("findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding" (citation omitted)).
¶34 In sum, we reject Putman's argument that he received ineffective assistance of trial counsel when his counsel failed to act in response to the prosecutor's statement concerning a sleeping juror.
III. Putman Fails to Show that His Constitutional Right to an Impartial Jury Trial Was Impaired
¶35 Putman argues that the circuit court erred by not sua sponte inquiring into the issue of the potentially sleeping juror. He argues that the court was required and failed to conduct an evidentiary hearing to determine the extent of the juror's inattentiveness. See Novy , 346 Wis. 2d 289, ¶47 (first step after an allegation of juror inattentiveness is for the court to make a factual finding regarding the extent of the inattentiveness, "here, whether the juror was sleeping").
¶36 However, the circuit court did hold an evidentiary hearing on the question of whether the juror was sleeping and found that no juror slept. We have already explained why that finding is not clearly erroneous. Thus, Putman's constitutional right to an impartial jury was not impaired and no further inquiry was required.
CONCLUSION
¶37 For the reasons stated above, we affirm.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

On appeal, Putman also argues that Wilke's testimony was inadmissible because "Wilke lacked personal knowledge regarding the matter to which he testified" and his testimony "violated Putman's right to confrontation." Because the State does not argue that the circuit court improperly excluded the testimony as inadmissible hearsay, we do not address Putman's additional challenges to the testimony's admissibility.

We are unsure from the briefing whether Putman intends to raise a separate argument that the circuit court did not give appropriate weight to the potential prejudice of Wilke's statement. If Putman does intend to argue that the court erred in its weighing of the potential prejudice, he does not explain how the court misused its discretion by doing so. See State v. Bunch , 191 Wis. 2d 501, 509-511, 529 N.W.2d 923 (Ct. App. 1995) (appellate courts defer to the circuit court's discretionary weighing of factors in deciding whether to grant a mistrial, because "the circuit court judge is present at the trial and is therefore better able to understand what occurred ... the circuit court is in a particularly good 'on-the-spot' position to evaluate factors such as a statement's 'likely impact or effect upon the jury' ") (citation and emphasis omitted; ellipses in original).

Putman intimates that the circuit court's recollection must be accorded little weight because it was expressed eighteen months after trial, but he does not explain what in the record calls into question the court's specific recollection here. Accordingly, we do not consider this topic further. See Clean Wis., Inc. v. PSC , 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments.").