COURT OF APPEALS
DECISION
DATED AND FILED

January 14, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1772-CR**

Cir. Ct. No. **2015CF4422**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SAMTERIOUS GORDON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: THOMAS J. McADAMS and T. CHRISTOPHER DEE, Judges.[1] *Affirmed.*

Before Kessler, Dugan and Fitzpatrick, JJ.

---

[1] The Honorable Thomas J. McAdams presided at trial and sentencing and entered the judgment of conviction. The Honorable T. Christopher Dee presided over postconviction proceedings and entered the order denying Gordon's postconviction motion. We will refer to Judge McAdams as the circuit court and to Judge Dee as the postconviction court.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Samterious Gordon appeals a judgment of conviction for one count each of first-degree reckless injury with use of a dangerous weapon, first-degree recklessly endangering safety with use of a dangerous weapon, and being a felon in possession of a firearm. Gordon also appeals an order of the circuit court denying his motion for postconviction relief. Gordon argues that he is entitled to a new trial because he was denied his right to a fair trial and because Gordon's trial counsel was constitutionally ineffective. For the reasons discussed below, we affirm the judgment of conviction and the order of the circuit court.

## BACKGROUND

¶2 There is no dispute as to the following facts.

¶3 On September 28, 2015, Milwaukee police department detectives were dispatched to Froedtert Hospital where two victims were being treated for gunshot wounds. One victim, C.J., informed police that he and a man driving a black Infiniti had been in an argument. The driver of the Infiniti shot C.J. and drove away. The second victim, L.C., informed police that he had observed C.J. standing by the side of a black vehicle. L.C. approached the vehicle and, when L.C. turned away from the vehicle, he heard gunshots and was shot. Multiple witnesses identified Gordon, in photo arrays, as the shooter. Gordon was subsequently charged with one count each of first-degree reckless injury with use of a dangerous weapon, first-degree recklessly endangering safety with use of a dangerous weapon, and with being a felon in possession of a firearm.

¶4 The jury found Gordon guilty of all charges. Gordon filed a postconviction motion contending that he was entitled to a new trial. Gordon argued, first, that he was denied his right to a fair trial because jurors who deliberated and found him guilty allegedly fell asleep during material testimony. Gordon also argued to the postconviction court that his trial counsel was ineffective for failure to take "action to remedy the inattentiveness of the sleeping juror[s]" and because trial counsel elicited prejudicial, false, and inadmissible testimony.

¶5 The postconviction court held an evidentiary hearing at which there was testimony from Gordon's trial counsel, Gordon, and Gordon's mother. Following the hearing, the postconviction court denied Gordon's motion. The court ruled that Gordon was not denied his right to a fair trial and that his trial counsel was not constitutionally ineffective.

¶6 Gordon appeals. We discuss additional material facts in the discussion that follows.

**DISCUSSION**

¶7 As noted, Gordon argues that he is entitled to a new trial because he was denied his due process right to a fair trial because the circuit court did not dismiss the jurors that he alleges were sleeping during parts of his trial. Gordon also argues that he should be granted a new trial because he was denied his right to effective assistance of counsel. More specifically, Gordon argues that his trial counsel was ineffective for not making additional requests for relief at trial concerning the jurors that Gordon alleges were sleeping and for eliciting testimony from a law enforcement officer that was purportedly prejudicial, false, and inadmissible. Below, we address and reject Gordon's arguments.

### I. Gordon Was Not Denied His Right to a Fair Trial Based on Alleged Sleeping Jurors.

#### A. Governing Principles and Standard of Review.

¶8    "The right to a fair trial by an impartial jury underlies the requirement that jurors have heard all of the material portions of the trial." *State v. Novy*, 2013 WI 23, ¶47, 346 Wis. 2d 289, 827 N.W.2d 610.  The failure of a juror to hear all material portions of the trial, "whether it is due to a hearing deficiency or a state of semi-consciousness, could imperil the guarantees of impartiality and due process." *Id.* (citation omitted).  Where there is an allegation of juror inattentiveness, the circuit court engages in a two-step analysis.  *See id.* "First, the circuit court must determine, as a question of fact, whether the juror was actually inattentive to the point of potentially undermining the fairness of the trial." *Id.*  "Second, if the circuit court finds that the juror was in fact sufficiently inattentive, the court must determine whether the defendant suffered prejudice as a result of the juror's inattentiveness." *Id.*

¶9    "[Q]uestions involving juror conduct and attentiveness implicate the circuit court's broad discretion." *Id.*, ¶48.  On appeal, we will uphold the circuit court's factual findings regarding juror conduct and attentiveness unless those findings are clearly erroneous.  *See id.*  A circuit court's factual findings are not clearly erroneous if the findings are supported by any credible evidence in the record, or any reasonable inferences from that evidence.  *See Insurance Co. of N. Am. v. DEC Int'l, Inc.*, 220 Wis. 2d 840, 845, 586 N.W.2d 691 (Ct. App. 1998).  However, we review de novo a circuit court's determination as to prejudice.  *Novy*, 346 Wis. 2d 289, ¶48.

## B. The Circuit Court's Finding That No Juror Was Asleep
## During the Trial is Not Clearly Erroneous.

¶10    Gordon contends he was denied his due process right to a fair trial under the United States and Wisconsin Constitutions because the circuit court failed to dismiss jurors who Gordon alleges were sleeping during material testimony.[2]  The State responds that Gordon has forfeited this argument because his trial counsel "fail[ed] to request any action" concerning the allegedly sleeping jurors at trial.  *See State v. Rogers*, 196 Wis. 2d 817, 826-29, 539 N.W.2d 897 (Ct. App. 1995) (stating that a failure to raise a specific challenge before the circuit court forfeits the right to raise that challenge on appeal).  Gordon does not dispute the State's forfeiture argument.  *Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (stating that a proposition asserted by a respondent on appeal and not disputed by the appellant's reply is taken as admitted).  We conclude that Gordon has forfeited this argument.  However, even if Gordon had properly preserved this argument for appeal, we would reject his contention.  *See State v. Kaczmarski*, 2009 WI App 117, ¶7, 320 Wis. 2d 811, 772 N.W.2d 702 (stating that an appellate court may in its discretion address an issue that has been forfeited).

¶11    At trial, the circuit court addressed whether two jurors, who had been observed by the court, prosecutor, and defense counsel with their eyes closed during testimony, had been asleep.  The court found that neither of the jurors had actually been sleeping.  The court stated that one of the jurors had "been resting …

---

[2] Gordon's inattentiveness argument is premised on Gordon's allegation that the jurors were sleeping during the trial.  Gordon does not argue that the alleged sleeping jurors were otherwise inattentive.

his face on his hand" but that the court did not believe the juror was "actually asleep," and that the other juror had merely "had his eyes closed here and there."

¶12    Gordon argues that the circuit court's finding that neither juror was sleeping was clearly erroneous because affidavits submitted to the court by him and his mother, Ms. Lollie Gordon, and testimony at the evidentiary hearing by him, Ms. Gordon, and his trial counsel demonstrate that the jurors were "clearly asleep for a significant part of the testimony taken during the afternoon of the second day of trial." We now summarize those allegations.

¶13    Trial counsel testified at the post-trial evidentiary hearing that one juror's "eyes were closed and his head was down" and "he was leaning his head against[] his … hand." Trial counsel testified that he observed that juror with his eyes closed for "five minutes or so," but that counsel "couldn't tell if [the juror] was sleeping or not." Trial counsel did not testify that any juror was sleeping.[3]

¶14    In his affidavit, Gordon stated that, during testimony, he observed a "balding man in the far left of the front row of the jury panel … nod off with his hand over his head" and that he then observed the juror "drop his hand and fall sound asleep for at least 20-30 minutes." Gordon also stated that he observed another juror "nodding off during a portion of that afternoon's testimony," but that he "was unable to see for how long or how deeply [that] juror was sleeping." At the evidentiary hearing, Gordon testified that he observed a "guy who was balding

---

[3] Gordon mischaracterizes trial counsel's testimony in his briefing in this court. Gordon states that his trial counsel testified "that he had observed three separate jurors sleeping at various times during" the trial and that trial counsel testified that "there were three jurors sleeping at different times." There is nothing in the transcript of the evidentiary hearing to support Gordon's assertion that trial counsel testified, unequivocally, that he observed a juror or jurors sleeping.

… sitting … with his head, like down as if he was sleeping[] [and] [h]is head nodding." Gordon testified that the juror's eyes were closed and that the juror's "head was just completely limp, as if he was out of it" and that the juror was "plainly asleep." Gordon testified that this went on for "about fifteen to twenty minutes." Gordon also testified that he "got [his] attorney['s] attention as soon as [he] noticed it" and that after that, "the juror was sleeping, for at least another five or ten minutes."

¶15    Ms. Gordon stated in her affidavit that she observed a "man in the middle of the front row of the jury panel" sleeping. She further stated:

> During most of the afternoon testimony, [she] observed this juror nodding off, drifting to the side, and then briefly waking up again. He appeared to be fast asleep. During this time, he had his eyes closed and when he woke up it was only for a few seconds. He then nodded off again and went to sleep.

At the evidentiary hearing, Ms. Gordon testified that she observed a juror who "[k]ept nodding his head," that the juror had his eyes closed for "about a minute or two," and that "several times" the juror "was just drifting, head from side to side" and that "[i]n total," this happened for "[t]hree minutes." She further testified that the juror "appear[ed] to be asleep."

¶16    The State responds that it "does not dispute that two jurors appeared to close their eyes" during certain portions of the trial but that the circuit court's finding that the jurors had not been asleep is not clearly erroneous. We agree with the State.

¶17    To repeat, this court may not set aside a circuit court's factual findings as to any juror's attentiveness unless that finding is not supported by any credible evidence in the record, or any reasonable inferences that can be drawn

7

from that evidence. *See Novy*, 346 Wis. 2d 289, ¶48; ***DEC Int'l***, 220 Wis. 2d at 845. This is true even where there is evidence that could lead to the opposite conclusion. *See **Jacobson v. American Tool Cos., Inc.***, 222 Wis. 2d 384, 390, 588 N.W.2d 67 (Ct. App. 1998).

¶18 As noted, the circuit court found, based on its personal observation of the jurors, that none of the jurors were sleeping. The postconviction court did not make any express findings as to Gordon and Ms. Gordon's credibility. However, when a circuit court sitting as the fact finder does not make express findings, we assume that the circuit court made implicit findings in a manner supporting the court's decision; in this case, denying the motion. ***State v. Martwick***, 2000 WI 5, ¶31, 231 Wis. 2d 801, 604 N.W.2d 552. This includes implicit findings regarding the credibility of a witness who provides testimony contrary to the circuit court's decision. *See **State v. Echols***, 175 Wis. 2d 653, 673, 499 N.W.2d 631 (1996) ("Where it is clear under applicable law that the [circuit] court would have granted the relief sought by the defendant had it believed the defendant's testimony, its failure to grant the relief is tantamount to an express finding against the credibility of the defendant."). For those reasons, we conclude that the postconviction court found the testimony of Gordon and Ms. Gordon not to be credible.

¶19 Accordingly, there is no basis to reject the circuit court's findings, and we conclude that the circuit court's finding that the jurors were not sleeping is not clearly erroneous. We, therefore, reject Gordon's argument that he was denied his due process right to a fair trial.

## **II. Gordon Was Not Denied Effective Assistance of Counsel.**

### **A. Governing Principles and Standard of Review.**

¶20     When evaluating claims of ineffective assistance of counsel, this court applies the two-part analysis described in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that the deficiency prejudiced his or her defense.  *Id.*

¶21     To demonstrate that counsel's performance was deficient, the defendant must point to specific acts or omissions by the lawyer that are "outside the wide range of professionally competent assistance."  *Id.* at 690.  "When evaluating counsel's performance, courts are to be 'highly deferential' and must avoid the 'distorting effects of hindsight.'"  *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305 (citing *Strickland*, 466 U.S. at 689).  "Counsel need not be perfect, indeed not even very good, to be constitutionally adequate."  *Thiel*, 264 Wis. 2d 571, ¶19 (citation omitted).

¶22     To show prejudice, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  "The focus of this inquiry is not on the outcome of the trial, but on 'the reliability of the proceedings.'"  *Thiel*, 264 Wis. 2d 571, ¶20 (citation omitted).  We need not address both aspects of the *Strickland* test if the defendant does not make a sufficient showing on either one.  *See Strickland*, 466 U.S. at 697.

¶23    Our review of a claim of ineffective assistance of counsel presents a mixed question of fact and law. *Thiel*, 264 Wis. 2d 571, ¶21. We will uphold the postconviction court's factual findings, which "include 'the circumstances of the case and the counsel's conduct and strategy,'" unless those are clearly erroneous. *Id.* (citation omitted). However, we review de novo the question of "[w]hether counsel's performance satisfies the constitutional standard for ineffective assistance of counsel." *Id.*

**B. Trial Counsel Was Not Ineffective For Not Taking Additional Action Regarding the Allegedly Inattentive Jurors.**

¶24    Gordon alleged in his postconviction motion that his trial counsel was ineffective for failing to take action to "protect [Gordon's] rights to be tried before a fair and impartial jury" after "the issue of the sleeping juror[s] had been brought to the court's attention." Gordon alleged that effective trial counsel would have "request[ed] that the sleeping jurors be stricken, … request[ed] a mistrial[,] … request[ed] the individual voir dire of the juror[s,] … [or] object[ed] to the continued service of the juror[s]."

¶25    As mentioned, the circuit court found, based upon its own observations, that the jurors were not sleeping during testimony. We have already determined that the circuit court's finding is not clearly erroneous. Accordingly, any of the actions Gordon asserts his trial counsel should have undertaken concerning the allegedly sleeping jurors would have been an exercise in futility. Counsel is not deficient for failing to make meritless arguments. *See Quinn v. State*, 53 Wis. 2d 821, 827, 193 N.W.2d 665 (1972); *State v. Toliver*, 187 Wis. 2d 346, 360, 523 N.W.2d 113 (Ct. App. 1994). Therefore, we conclude that trial

10

counsel was not ineffective for failing to take additional actions with regard to the jurors who were not sleeping.

## C. Trial Counsel's Deficient Performance Did Not Prejudice Gordon.

¶26 Next, Gordon argues that his trial counsel was ineffective for allowing the jury to hear purportedly prejudicial, false, and inadmissible testimony concerning an identification of Gordon as the shooter.

¶27 Edmund Fitting, an officer with the Milwaukee police department, investigated the shooting and testified at trial. On cross-examination by Gordon's trial counsel, Officer Fitting testified at trial as follows:

> [Defense Counsel]     Did anyone else witness and make a statement to the police[] [about the] shooting?
>
> [Officer Fitting]     Besides who?
>
> [Defense Counsel]     Other than family members related to [C.J.], Coleman … and [L.C.].
>
>     Anyone else make a statement saying that they saw [Gordon] allegedly shoot?
>
> [Officer Fitting]     I do recall, yes.
>
> [Defense Counsel]     And … [w]as there a police report made of that?
>
> [Officer Fitting]     (No response.)
>
> [Defense Counsel]     If you know?
>
> [Officer Fitting]     I recall somebody telling what you just explained. Whether or not there was a police report written on it, there should be. And I believe it was – had to do with somebody on a bicycle.

11

¶28     Gordon argues that the above-mentioned testimony is inadmissible hearsay and that the testimony is also false.[4]  Gordon argues that Officer Fitting's testimony is refuted by a police report, which Gordon introduced as part of his postconviction motion.  The police report indicates that on the day of the shooting, police spoke with an individual named Jeffrey McClain who informed police that he was riding his bicycle and heard "at least 10 shots," but that he did not see the actual shooting take place and did not see the shooter's face.

¶29     The State does not develop an argument that trial counsel was not deficient in eliciting the challenged testimony by Fitting.  Instead, the State "assumes for the sake of argument" that trial counsel was "deficient by eliciting [the testimony] and then failing to impeach [Officer] Fitting with the police report."  However, the State argues that Gordon has failed to show that his trial counsel's errors were prejudicial in light of the other evidence presented at trial. We agree with the State.

¶30     To prove that he was prejudiced by his trial counsel's errors, Gordon must show that counsel's errors rendered the resulting conviction unreliable in light of the other evidence presented.  ***State v. Swinson***, 2003 WI App 45, ¶58, 261 Wis. 2d 633, 660 N.W.2d 12.  We conclude that challenged testimony by Officer Fitting does not undermine our confidence in the jury's verdict in light of

---

[4] Gordon asserted in his postconviction motion that trial counsel was deficient "by permitting [the alleged hearsay testimony by Officer Fitting] without objection."  As pointed out by the State, the challenged testimony was elicited by defense counsel and, therefore, Gordon cannot complain about a failure to object to the testimony as hearsay.  *See **Shawn B.N. v. State***, 173 Wis. 2d 346, 372, 497 N.W.2d 141 (Ct. App. 1992) (stating that litigants who invite error at trial cannot complain of that error on appeal).  Accordingly, we broadly construe Gordon's postconviction motion as asserting that trial counsel was ineffective for eliciting the challenged testimony.

other evidence that overwhelmingly pointed to Gordon's guilt. We now summarize that evidence.

¶31     At trial, L.C. testified that on September 28, 2015, he arrived at his mother's residence in Milwaukee and observed a "commotion" going on in the street between C.J., who was standing in the "middle of the street," and Gordon, who was sitting in the driver's seat of a vehicle. L.C. testified that he had an unobstructed view of Gordon's face, and that he had previously seen Gordon "around the neighborhood." L.C. testified that, as he approached C.J. and Gordon, "gunshots started ringing out" and L.C. was shot in the left arm. L.C. identified Gordon as the shooter. L.C. testified that he knew the shots came from Gordon's vehicle because he was only approximately one foot away from Gordon's vehicle at the time of the shooting. On cross-examination, L.C. testified that he did "[n]ot actually see" Gordon fire the shots, but that he knew the shots came from the direction of the driver's side of Gordon's vehicle.

¶32     Nicole Fry[5] testified that, on September 28, 2015, she arrived at L.C.'s mother's house with L.C. She observed C.J. and L.C.'s daughter, Loretta Coleman, arguing in the street with Gordon, who was sitting in the driver's seat of a vehicle. Fry testified that she was sitting inside L.C.'s car and that, as she was beginning to exit the vehicle, Gordon began shooting. Fry testified that she "fell down to the ground, and [she] could see [Gordon] shooting out the window of his car … as he started driving away." On cross-examination, Fry testified that she

---

[5] Nicole Fry is also referred to as Nicole Johnson and as Nicole Johnson Fry in the record.

had seen Gordon prior to the shooting and that she was "more than a hundred [percent] sure" that Gordon fired gunshots in the direction of C.J. and L.C.

¶33     C.J. testified that, on September 28, 2015, he argued with Gordon, who was sitting in the driver's seat of his vehicle.  C.J. testified that he was standing "close" to the driver's side of Gordon's vehicle and that he "swung at [Gordon][] [and] [t]hat's when [Gordon] shot me."  C.J. testified that he was shot in his left and right arms, his left hand, and that a bullet grazed his head, and that L.C. was also shot.  C.J. further testified that, at the time of the shooting, he was carrying a Ruger handgun in a holster, that he did not take the gun out of the holster during his interaction with Gordon and that, after he was shot, Loretta Coleman took the gun from him.

¶34     Also, Officer Fitting testified that, following the shooting, he interviewed a witness, showed photo arrays to witnesses, and conducted an investigation of the scene.  Fitting testified that "5 fired brass casings … from a [.]380 caliber firearm" were found in the street after the shooting.  Officer Fitting testified that during his witness interviews, he was informed that C.J. had a concealed carry permit; that C.J. had a firearm on his person at the time of the shooing; and that after the shooting, the gun was removed "and then placed it up in the house."  Officer Fitting testified that a 9-millimeter Ruger was found in an "upstairs bedroom, on a bookshelf," at C.J.'s home and that the weapon "was fully loaded with 14 rounds in the magazine."  Officer Fitting testified that the ammunition in the Ruger was different from the spent shell casings that were recovered at the scene of the shooting.  Officer Fitting testified that the Ruger was tested to determine if it had been recently fired and that "it didn't appear that it had been fired."

¶35 Gordon testified in his own defense. Gordon testified that he stopped his vehicle near C.J.'s mother's house and that Loretta Coleman came over to his vehicle to talk to him. Gordon testified that C.J. then "came running … up to [Gordon's] car" and the two men started to argue. Gordon testified that C.J. punched him, "bust[ing] [Gordon's] top lip," and that at that time, C.J. "pulled [a] gun off his waistband." Gordon testified that after C.J. punched him, he "hit the gas, and … [took] off … [a]nd from there, I just hear plenty [of] shots. I hear his gun go off." Gordon testified that as he pulled away, he heard "10 shots at least" from "different calibers of guns."

¶36 We conclude that there was overwhelming evidence of Gordon's guilt because multiple witnesses identified Gordon as the shooter, and there was no evidence (other than Gordon's testimony) that anyone else fired the shots which wounded L.C. and C.J. Officer Fitting's testimony about the third-party identification of Gordon as the shooter was isolated in the context of the entire trial and lacked probative value. Officer Fitting did not identify the supposed witness or provide any details about what information was provided to police by the unidentified witness. For those reasons, there is no reasonable likelihood that Officer Fitting's challenged testimony affected the jury's verdict. Accordingly, Gordon has failed to establish that he was prejudiced by his trial counsel eliciting the challenged testimony. Therefore, his ineffective assistance of trial counsel claim fails.

## CONCLUSION

¶37 For the foregoing reasons, the judgment of conviction and order of the circuit court are affirmed.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2017-18).